**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

In re:

CAPITAL TRANSPORTATION, INC.

Chapter 11 Case

Case No.  17-11664-JKO

       Debtor.
_____/

**AMENDED DISCLOSURE STATEMENT IN CONNECTION**
**WITH CHAPTER 11 PLAN OF REORGANIZATION**
**OF CAPITAL TRANSPORTATION, INC.**

Dated: November 30, 2017

David A. Ray, P.A.
David A. Ray, Esq.
Counsel for the Debtor
1330 Southeast 4th Avenue, Suite I
Fort Lauderdale, Florida 33316
Telephone: (954) 399-0105

**DISCLOSURE STATEMENT FOR**
**THE PLAN OF REORGANIZATION BY**
**CAPITAL TRANSPORTATION, INC.**

> **THE PROPONENT RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.**

> *Please note that any capitalized terms not specifically defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan attached hereto as <u>Exhibit A</u>.*

## I.    <u>INTRODUCTION</u>

Capital Transportation, Inc. hereinafter referred to as the ("Debtor" or "Proponent"), has prepared this Disclosure Statement in connection with the solicitation of acceptances or rejections of the Plan proposed by the Debtor, a copy of which accompanies this Disclosure Statement as **Exhibit "A"**.  Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

This Disclosure Statement is presented to certain holders of Claims against or Interests in the Debtor in accordance with the requirements of Section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").  Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the debtor's creditors and interest holders, to make an informed judgment whether to accept or reject a plan.  This Disclosure Statement may not be relied upon for any purpose other than that described above.

**THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.  THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.  ANY TERMS NOT DEFINED IN THIS DISCLOSURE STATEMENT ARE DEFINED IN THE PLAN.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUES OF ITS ASSETS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS.  YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PROPONENT, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITIONS OF THE DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN. AN EFFORT HAS BEEN MADE TO BE ACCURATE. NEVERTHELESS, THE PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTOR OR ITS FINANCIAL CONDITIONS IS ACCURATE OR COMPLETE.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED. THERE IS NO GUARANTY THAT FACTS WILL NOT CHANGE AFTER THIS DISCLOSURE STATEMENT IS FILED; AND IT MUST BE ASSUMED THAT SOME FACTS WILL INDEED CHANGE FROM THAT TIME UNTIL THE HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT (DISCUSSED BELOW).

STATEMENTS OF THE ASSETS AND LIABILITIES OF THE DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF ITS CHAPTER 11 CASE ARE ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR AND INTEREST HOLDER IS STRONGLY URGED TO REVIEW THE PLAN BEFORE CASTING A BALLOT.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR AND INTEREST HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

This Disclosure Statement was filed with the Bankruptcy Court on August 10, 2017. The Bankruptcy Court will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") beginning at _____ **p.m.** (prevailing Eastern Standard/Daylight time) on _____**, 2018**, in the United States Bankruptcy Court for the Southern District of Florida, U.S. Courthouse, 299 E. Broward Boulevard, Courtroom 301, Fort Lauderdale, Florida 33301. At the Confirmation Hearing, the Bankruptcy Court will review a ballot report concerning votes cast for acceptance or rejection of the Plan and will consider whether the Plan satisfies the requirements of the Bankruptcy Code.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact:

By mail:

David A. Ray, Esq.
Counsel for Debtor
1330 Southeast 4th Avenue, Suite I
Fort Lauderdale, Florida 33316
Telephone: (954) 399-0105

### A.    Overview

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and equity interest holders.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a chapter 11 plan is the principal objective of a chapter 11 case. A plan sets forth the means for satisfying claims against and equity interests in the debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any issuer of securities under the plan, any person acquiring property under the plan and any holder of a claim against or equity interest in a debtor, even those holders that voted to reject the plan. Subject to certain limited exceptions, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

After a plan has been filed, the holders of claims against or equity interests in a debtor are generally permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, however, Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical investor to make an informed judgment about the plan. The Debtor is submitting this Disclosure Statement to Holders

4

of Claims against the Debtor to satisfy the requirements of Section 1125 of the Bankruptcy Code.

The Plan proposes that the Debtor will restructure the value or payment of the Debtor's various claims (or treat said claims as otherwise agreed to by the parties) and provides for a distribution to the holders of all claims.

Pursuant to Bankruptcy Code Section 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan, Confirmation of and receiving Distributions under the Plan only to the extent (i) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and (ii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date.

## B.    Class Treatment

The Debtor is a corporation with the sole business of providing taxi cab services in the Tallahassee, Florida area. For the most part, the Debtor's ability to function relies upon obtaining services from other, related corporate entities, including dispatching and the leasing of many of its vehicles. For this reason, the Debtor's assets are not particularly extensive, and its value as a going concern would be sharply limited if withdrawn from the network of services upon which it relies.

On or about February 17, 2015, a judgment was entered against the Debtor by the United States District Court for the Northern District of Florida in the amount of $250,000.00. On or about May 4, 2016, a further judgment for attorney's fees was entered against the Debtor in the amount of $101,315.00. The weight of outstanding judgments in the combined amount of $351,315.00 threatened the Debtor's ability to operate profitably or otherwise, and the proposed class treatment reflects the Debtor's good faith proposal to make legitimate headway on its debt service while remaining viable in the marketplace, taking into account the Debtor's questionable liquidation value.

Accordingly, the Plan classifies Claims and Interests as follows:

**1.1    Class 1:        Allowed Priority Claims.**

Class 1 consists of the Allowed Priority Claims of the Debtor's affiliates, if any.

Owing to exigent circumstances immediately following the filing of its bankruptcy petition, the Debtor sought and received Bankruptcy Court authority to accept a total of $60,332.50 as post-petition financing (the "Post-Petition Financing") from related entities B&L Servicing, Inc., Gaddis Capital, and Gaddis Corporation (the "Affiliated Entities").

Although the Affiliated Entities may seek leave of Court to treat the Post-Petition Financing as administrative expense claims, for purposes of Plan confirmation, the Debtor proposes to treat the Post-Petition Financing as new value contributed by the principal of the Debtor and related entities.

Class 1 consists of Insiders, and is impaired under this Plan.

5

**1.2    Class 2:    Allowed Secured Claim of Passport Leasing, Inc.**

Class 2 consists of Allowed Secured Claim of Passport Leasing, Inc. The Debtor shall pay the Class 2 claim in full, less interest and attorneys' fees, in the amount of $119,566.00, over 1 year in twelve (12) equal monthly installments with payments to begin on the Effective Date. Any outstanding balance of this claim shall be paid in full in a lump sum payment prior to the sixtieth month following the Petition Date.

Class 2 is an Insider, and impaired under this Plan.

**1.3    Class 3:    Allowed Unsecured Claims of B&L Service, Inc.**

Class 3 consists of the Allowed Unsecured Claims of B&L Service, Inc. The Debtor shall pay the Class 3 claim a fifteen percent (15%) distribution in the total amount of $32,543.25, with payments commencing on the Effective Date. Any outstanding balance of this claim shall be paid in full in a lump sum payment prior to the sixtieth month following the Petition Date.

Class 3 is an Insider, and impaired under this Plan.

**1.4    Class 4:    Allowed Unsecured Claims Arising out of Cedric Jones Litigation.**

Class 4 consists of the Allowed Unsecured Claims Arising out of Cedric Jones Litigation, in the total estimated amount of $355,405.25. Class 4 shall be paid a fifteen percent (15%) distribution in the total amount of $53,310.79 over five (5) years, in total monthly payments of $888.51 per month.

Class 4 is not an Insider, and is impaired under this Plan.

**1.5    Class 5:    Allowed General Unsecured Vendor Claims.**

Class 5 consists of Allowed General Unsecured Vendor Claims in the total estimated amount of $17,591.29. Class 5 shall be paid a fifteen percent (15%) distribution in the total amount of $2,638.69, which shall be paid in one (1) lump sum payment as of the Effective Date.

Class 5 is separately classified from Class 4, as it consists entirely of vendor claims necessary to the smooth and continued operation of the Debtor during the post-confirmation period, and should be treated as a "convenience class" pursuant to 11 U.S.C. § 1122(b).

Class 5 is not an Insider, and is impaired under this Plan.

**1.6    Class 6:    Allowed Equity Interest**

Class 6 consists of the Allowed Equity Interests of Gaddis Corporation, one hundred percent (100%). From and after the Effective Date, Allowed Equity Interests in

the Debtor shall continue to remain in the Debtor respectively, so as to permit the Debtor to implement and execute the Plan.

If the Plan is confirmed, Class 6 shall contribute the additional and further amount of $50,000.00 as new value as of the Effective Date.

Class 6 is not impaired under this Plan.

## **Voting Instructions**

**THE PROPONENT STRONGLY RECOMMENDS THAT EACH CREDITOR AND EQUITY INTEREST HOLDER ENTITLED TO VOTE ON THE PLAN VOTE TO _ACCEPT_ THE PLAN.**

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject the plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted the plan and are not entitled to vote on it. The holders of Claims in Classes 1, 2, 3, and 6 are not impaired under the Plan or have consented to the treatment described therein. Thus, pursuant to Section 1126(f) of the Bankruptcy Code, the claimants in Classes 1, 2, 3 and 6 are deemed to have accepted the Plan, and have no vote.

The holders of Claims in Classes 4 and 5 are Impaired and are entitled to receive or retain property under the plan and thus may vote to either accept or reject the Plan. The Proponent has enclosed Ballots with this Disclosure Statement to solicit the votes of the claimant in Classes 4 and 5.

**A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO THE HOLDER OF CLAIMS IN CLASSES 4 AND 5 BEFORE VOTING, SUCH HOLDERS SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND THE PLAN DOCUMENTS, IN THEIR ENTIRETY.**

You may vote on the Plan by completing the enclosed Ballot and mailing it to the following address:

OFFICE OF THE CLERK
UNITED STATES BANKRUPTCY COURT
299 EAST BROWARD BOULEVARD, ROOM 112
FT. LAUDERDALE, FL 33301

You should use the Ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan. You may not cast Ballots or votes orally or by facsimile. **In order for your Ballot to be considered by the Bankruptcy Court, it must be received at the above address by 5:00 p.m. (prevailing Eastern time) on _____, 2017 (the "Voting Deadline").** If you are a claimant in Class 4 or 5, and you did not receive a Ballot with this Disclosure Statement, please contact:

By mail:

David A. Ray, Esq.
Counsel for Debtor
1330 Southeast 4th Avenue, Suite I
Fort Lauderdale, Florida 33316
Telephone: (954) 399-0105

      **Any ballot executed by the holder of an allowed claim that does not indicate acceptance or rejection of the Plan, will not be considered.  An impaired class of claims accepts a plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims in the class that actually vote are cast in favor of the plan.  A class of interests accepts a plan if at least two-thirds (2/3) in amount of the allowed interests of such class that actually vote are cast in favor of the plan.** Whether or not a creditor or interest holders votes on the plan, such person will be bound by the terms and treatment set forth in the plan if the Bankruptcy Court confirms the plan. Pursuant to the provisions of Section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the plan if the vote is not cast in good faith.

      If the voting members of an impaired class do not vote unanimously for the plan but, nonetheless, vote for the plan by at least the requisite majorities, the plan, at a minimum, must provide that each member of such class will receive property of a value, as of the Effective Date, that is not less than the amount such class members would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

      The Debtor may dispute proofs of Claim that have been filed or that the Debtor listed as disputed in the schedules that the Debtor filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on or otherwise participate in distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims.  The Bankruptcy Court may temporarily allow a Claim for voting purposes only.  Allowance of a Claim for voting purposes or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim or Interest will be allowed or disallowed for distribution purposes.  The Debtor's schedules listing Claims and whether such Claims are disputed can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Southern District of Florida, 299 East Broward Boulevard, Room 112, Fort Lauderdale, Florida 33301. The Bankruptcy Court established June 12, 2017 as the bar date by which all proofs of Claim or Interest were required to be filed, except for governmental claims which had a deadline of August 9, 2017.

      **C.**    **Cramdown**

      Once it is determined which impaired classes have accepted the plan, the bankruptcy court will determine whether the plan may be confirmed.  The bankruptcy court may confirm a plan even if all but one of the impaired classes do not accept the plan if the bankruptcy court finds that at least one impaired class of claims (not including any acceptances by "insiders" as defined in Section 101(31) of the Bankruptcy Code) has accepted the plan and that certain additional conditions are met.  The Debtor will

therefore request that the Bankruptcy Court confirm the Plan under the "cramdown" provision of Section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims or Interests.

Section 1129(b) of the Bankruptcy Code is generally referred to as the "cramdown" provision. Pursuant to the cramdown provision, the bankruptcy court may confirm a plan over the rejection by a class of secured claims if the plan is fair and equitable and satisfies one of the alternative requirements of Section 1129(b)(2)(A) of the Bankruptcy Code. Likewise, the bankruptcy court may confirm a plan over the rejection by a class of unsecured claims if the plan is fair and equitable and if the non-accepting claimants will receive the full value of their claims, or (even if the non-accepting claimants receive less than full value), if no class of junior priority will receive or retain anything on account of its prepetition claims or interests. Finally, the bankruptcy court may confirm a plan over the rejection by a class of interests if the plan is fair and equitable and if it provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the Effective Date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest of any property.

**THESE ARE COMPLEX STATUTORY PROVISIONS, AND THE PRECEDING PARAGRAPHS ARE NOT INTENDED TO BE A COMPLETE SUMMARY OF THE LAW. IF YOU DO NOT UNDERSTAND THESE PROVISIONS, PLEASE CONSULT WITH YOUR ATTORNEY. THE DEBTOR INTENDS TO RELY UPON THE "CRAMDOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE, IF NECESSARY.**

## II.    BACKGROUND OF THE DEBTOR

### A.    The Debtor and Events Leading to Chapter 11

The Debtor is owner and operator of a taxi cab servicing company based in Fort Lauderdale, Florida, providing transportation support services in the Leon County, Florida area. The Debtor is owned 100% by Gaddis Corporation ("Gaddis Corporation"). Owing to an imminent garnishment against its financial accounts, the Debtor filed this bankruptcy case to obtain "breathing-room" afforded to it by the automatic stay.

## III.    THE CHAPTER 11 CASE

### A.    Commencement of the Chapter 11 Case

On February 10, 2017, the Debtor filed a voluntary petition under Chapter 11 of the Code (the "Petition Date"). Since the Petition Date, the Debtor has continued in possession of its property and managed its business as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. On February 24, 2017, the Debtor filed its

schedules in bankruptcy and its statement of financial affairs.

### B.    Retained Professionals

The Bankruptcy Court authorized the Debtor to retain certain professionals to represent and assist them in connection with the Chapter 11 Case.  David A. Ray was employed as counsel to the Debtor by Court order entered on March 9, 2017 [ECF No. 46]. Michael Bonfanti and Offices were employed as special counsel to the Debtor by Court order on March 13, 2017 [ECF No. 50].

Pursuant to the provisions of the Code, the allowed fees and expenses incurred by the professionals employed by the estates constitute administrative expenses to be paid in accordance with the priorities established by the Code, subject to review and approval by the Bankruptcy Court.

### C.    Appointment of Creditors' Committee

No committee was appointed in this Case.

### D.    Debtor in Possession Financing

The Debtor has sought leave of Court to treat post-petition monetary amounts received from various insider entities as financing (*see* ECF Nos. 14, 57 & 69), but proposes to treat said transfers as "new value" for purposes of plan confirmation.

### E.    The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that the claimant can receive distributions from the debtor's bankruptcy case.  The bankruptcy court establishes a "bar date" – a date by which creditors must file their claims, or else such claims will not participate in the bankruptcy case or any distribution.  After the filing of all claims, the debtor evaluates such claims and can raise objections to them.  These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors whose claims are allowed.

The Bankruptcy Court established the deadline for filing proofs of Claim against and Interests in the Debtor, other than claims of governmental units, as June 12, 2017 (the "General Bar Date").

The Debtor has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process.  To date five (5) proofs of claim have been filed in the Chapter 11 Case.   Presently, the Debtor intends to file objections to one of the aforementioned Claims.

## IV.    <u>CHAPTER 11 PLAN</u>

**THE FOLLOWING IS A SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY**

**IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A. IF THERE IS ANY INCONSISTENCY BETWEEN THE DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, CREATE A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY. THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.**

### A.    Plan Overview

The Plan classifies Claims and Interests as set forth below:

Class 1: Allowed Priority Claims

Class 2: Allowed Secured Claim of Passport Leasing, Inc.

Class 3: Allowed Unsecured Claim of B&L Service, Inc.

Class 4: Allowed Unsecured Claims Arising out of Cedric Jones Litigation

Class 5: Allowed General Unsecured Vendor Claims

Class 6: Allowed Equity Interest

### B.    Unclassified Claims

Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable, the holder of an Allowed Administrative Claim shall receive on account of such Allowed Administrative Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which the Debtor and the holder of such Allowed Administrative Claim have agreed upon in writing. However, (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto, (ii) Professional fee Administrative Claims shall be paid after the Bankruptcy Court enters an Order allowing said Professional Fee Claims. The Debtor estimates the administrative claims to be approximately $40,000.00. There are no priority tax claims.

The Debtor will pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten days from the entry of an order confirming the Plan for pre-confirmation periods and simultaneously provide to the United States

Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. In addition, the Debtor will pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon post-confirmation disbursements made by the Debtor, until the earlier of the closing of these cases by the issuance of a final decree by the Bankruptcy Court, or upon the entry of an order by the Bankruptcy Court dismissing the Chapter 11 Case or converting the case to another chapter under the Bankruptcy Code, and the Debtor will provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

Each Professional in the Chapter 11 Case will file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Date. As of the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate.

### C.    Treatment of Claims and Interests

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Interest holders pursuant will be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interests in the Debtor and the Debtor's Estate, except as otherwise expressly provided in the Plan or the Confirmation Order. Pursuant to the Plan, Claims shall be treated as described in this Disclosure Statement.

### D.    Litigation

On the Effective Date, the Debtor will be authorized to commence, prosecute and defend any and all Causes of Action that arose before, on or after the Petition Date.

### E.    Post-Confirmation Operations of the Debtor

On and after the Effective Date, the Debtor shall continue to operate as it has during and before the filing of the Bankruptcy Case. The Debtor shall perform its duties under the Plan. Based upon the proposed restructuring of the Debtor's unsecured debt obligations, the Debtor submits that it will have sufficient cash flow to meet its obligations under the Plan. The Debtor may exercise all authority in performing the duties set forth in the Plan.

From and after the Effective Date, the Reorganized Debtor will continue in existence, with the same or similar management, until such time as the Interest Holder of the reorganized Debtor decides to terminate its existence in accordance with applicable non-bankruptcy law. The Debtor will have authority to take all actions necessary to: (a) hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute, or otherwise dispose of any Assets of the Debtor's Estate; (b) reconcile Claims and contest objectionable Claims and Disputed Claims; (c) make all distributions to be funded under the Plan; (d) engage professionals (including those Professionals that presently represent the Debtor) and any other persons necessary to assist the Debtor in fulfilling its responsibilities; (e) pay all necessary expenses incurred

in connection with the foregoing activities; (f) administer the Plan; (g) file tax returns and make other related corporate filings; (h) transfer assets; (i) administer the assets of the Debtor's Estate; (j) take or omit to take (or ratify) any action pursuant to the Debtor's employee benefit and other plans, including amending or terminating such plans; and (k) undertake such other responsibilities as are reasonable and appropriate.

On the Effective Date, the Reorganized Debtor will be authorized to oversee distributions under the Plan and to exercise those remedies available under the Plan.

Except to the extent otherwise provided under the Plan, upon the Effective Date, all Prepetition agreements (other than assumed), credit agreements, pre-petition loan documents and Post-Petition loan documents to which the Debtor is a party, and all lien claims and other evidence of liens against the Debtor, shall be deemed to be canceled and of no further force and effect, without any further action on the part of the Debtor. The holders of or parties to such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

The property of the Debtor's Estate will vest in the Reorganized Debtor on the Effective Date.

Following Confirmation the Debtor will execute such documents and take such other action as are necessary to effectuate the actions and distributions provided for in the Plan.

Upon the distribution of all required amounts under the Plan and the filing by or on behalf of the Debtor of a certification to that effect with the Bankruptcy Court, the Debtor shall be deemed to have substantially consummated the plan and any claims against the Debtor arising pre-petition shall be null and void.

F.      **Objections to Claims and Interests**

From and after the Effective Date, the Debtor will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment Objections to Claims and Interests pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. Except with respect to Administrative Claims and Claims for rejection damages, Objections to Claims must be filed by the Claim Objection Deadline (as set forth below) or as may be extended by the Bankruptcy Court from time to time.

An objection to the allowance of a Claim will be in writing and may be filed with the Bankruptcy Court by the Debtor at any time on or before forty-five (45) days after the Effective Date of the Plan (the "Claim Objection Deadline") or as may be extended by the Bankruptcy Court. The failure by the Proponent to object to any Claim for voting purposes will not be deemed a waiver of the Debtor's right to object to, or re-examine, any such Claim in whole or in part.

13

G.       **Distributions Under the Plan**

All full or partial payments made by the Debtor and received by the holder of a Claim or Interest before the Effective Date, or otherwise, will be deemed to be payments under the Plan for purposes of satisfying the obligations pursuant to the Plan. All payments will be made in accordance with the priorities established in the Bankruptcy Code unless otherwise provided in the Plan or agreed to with the payee.

Distributions to holders of Allowed Claims and Interests will be made: (a) at the addresses set forth in the proofs of Claim or Interest filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the date on which any related proof of Claim or Interest was filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim or Interest if no proof of Claim or Interest has been filed and the Debtor has not received a written notice of a change of address.

Cash payments to be made pursuant to the Plan will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Debtor.

Unless otherwise specifically provided for in the Plan, the Confirmation Order, (or any documents in connection therewith) or required by applicable bankruptcy law, Post-Petition interest will not accrue or be paid on General Claims or Interests. Interest will not accrue or be paid upon any Disputed Claim or Interest in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim or Interest becomes an Allowed Claim or Interest.

Other than in the Final Distribution, no payment of Cash in an amount of less than $20.00 will be made on account of any Allowed Claim or Interest

Unless otherwise expressly set forth in the Plan with respect to a specific Claim or Class of Claims or Interests, the "Face Amount" of a Disputed Claim or Interest means the amount set forth on the proof of Claim or Interest unless the Disputed Claim or Interest has been estimated for distribution purposes or, in the alternative, if no proof of Claim or Interest has been timely filed or deemed filed, zero.

Checks issued in respect of distributions under the Plan will be null and void if not negotiated within 90 days after the date of issuance. Any funds returned to the Debtor by reason of non-negotiated checks will be held by the Debtor until such time as they qualify for unclaimed property or if earlier, a request for reissuance is received by the Debtor. Requests for reissuance of any such check will be made, in writing, directly to the Debtor by the holder of the Allowed Claim or Interest with respect to which the check originally was issued. All Claims or Interests for which void checks were issued, as well as the underlying distributions, will be forever barred, as against the Debtor, its Estate and asset.

All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim Allowed by operation of law, Final Order of the Bankruptcy Court or the Plan. Accordingly, notwithstanding any other provision in the Plan, no payment or distribution will be made on account of or with respect to any Claim or Interest to the extent it is a Disputed Claim or Disputed Interest, unless and until the Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest. No

partial distributions will be made while an Objection is pending to part or all of a Claim or Interest.

In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Estate, the Debtor will have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim or Disputed Interest and which hearing may be held on an expedited basis), estimating a Disputed Claim or Disputed Interest pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether the Debtor has previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such Objection. All of these Objections and resolution procedures are cumulative and not necessarily exclusive of one another.

The Debtor will have the right (a) to initiate and prosecute any Objections to Claims against or Interests in the Debtor or the Estate, (b) to request estimation of each such Claims or Interests, (c) to litigate any Objection to Final Order, (d) to settle or to compromise any Claim or Interest, or (e) to withdraw any Objection to any Claim or Interest (other than an Allowed Claim or Interest or a Claim or Interest that is deemed to be allowed pursuant to the Plan or a Final Order).

The distributions and rights provided under the Plan will be in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor's Estate and all liens upon any Property of the Estate. The holders of liens satisfied, discharged and released under the Plan will execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Debtor evidencing the satisfaction, discharge and release of such liens.

In connection with the Plan and the distributions made in accordance thereto, to the extent applicable, the Debtor will comply with all tax withholding and reporting requirements imposed on them by any governmental unit and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements. The Debtor will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## H.    Conditions to the Effective Date

The Plan will not become effective and the Effective Date will not occur unless and until:

- The Bankruptcy Court shall have entered the Final Confirmation Order authorizing and directing the Debtor to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases and other

agreements or documents created, amended, supplemented, modified, or adopted in connection with the Plan;

•        The Bankruptcy Court shall have approved the information contained in this Disclosure Statement as adequate pursuant to section 1125 of the Bankruptcy Code;

•        No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this section are satisfied, or, if permitted, waived;

•        All documents, instruments and agreements, in form and substance satisfactory to the Debtor, provided for under the Plan or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby;

•        There shall exist sufficient Cash of the Debtor to pay claims pursuant to the terms of the Plan; and

•        No order of a court shall have been entered and shall remain in effect restraining the Debtor from consummating the Plan.

If the above-listed conditions do not occur, the Plan will terminate and be of no further force or effect unless these provisions in the Plan are waived in writing by the Proponent.

**I.        Modification/Revocation of the Plan**

The Debtor may alter, amend, or modify the Plan or Plan Documents under Section 1127 of the Bankruptcy Code or as otherwise permitted at any time before the Confirmation Date.    After the Confirmation Date and before the substantial consummation of the Plan, and in accordance with the provisions of Section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Proponent and any party in interest may, so long as the holders of Claims and Interests under the Plan are not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, this Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan.  However, prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

**J.        Effect of Confirmation**

The Plan will be binding upon and inure to the benefit of the Proponent, holders of Claims against and Interests in the Debtor, and their respective successors and assigns.

The ***PLAN PROVIDES FOR INJUNCTIONS*** as further described in section X of the Plan. The following is a summary of those provisions.

**Discharge. The Debtor and Reorganized Debtor shall receive a discharge to the fullest extent provided under 11 U.S.C. § 1141.**

**Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to**

the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan, against the Debtor, the Reorganized Debtor, the Confirmation Date Assets, the Post Confirmation Debtor Assets, Estate property: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff  or right of recoupment of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The Plan does not release or waive any Causes of Action.

### K.  Retention and Enforcement of Causes of Action

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor will have the exclusive right to enforce any and all Causes of Action against any person or Entities and rights of the Debtor that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor-in-possession, against any Person whatsoever, including but not limited to all avoidance powers granted to the Debtor under the Bankruptcy Code and all causes of action and remedies granted pursuant to Chapter 5 of the Bankruptcy Code.

### L.  Treatment of Executory Contracts and Unexpired Leases

Except for those executory contracts and unexpired leases (a) that are assumed or rejected pursuant to the Plan, (b) that are the subject of previous orders of the Bankruptcy Court providing for their assumption or rejection pursuant to Section 365 of the Bankruptcy Code, irrespective of whether such assumption or rejection has yet to occur on the Confirmation Date, including all leases or other executory contracts of the Debtor that have been or will be assumed  or (c) that are the subject of a pending motion before the Bankruptcy Court with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases, as of the Confirmation Date, all executory contracts and unexpired leases of the Debtor will be rejected pursuant to Section 365 of the Bankruptcy Code.

**The Confirmation Order will constitute an Order of the Bankruptcy Court approving all rejections under the Plan of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Any Claim for damages arising from any such rejection must be filed within 30 days after the date of the entry of the Confirmation Order, or such Claim will be forever barred, will not be enforceable against the Proponent, the Estate or any of their respective properties and will receive no distribution under the Plan or otherwise on account of such Claim.**

## V.    CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing

The Bankruptcy Court has scheduled the Confirmation Hearing to consider confirmation of the Plan for ___:00 p.m. (prevailing Eastern Standard/Daylight time) on _____ ____, 2018 before the Honorable John K. Olson, United States Bankruptcy Court for the Southern District of Florida, located at the United States Bankruptcy Court, U.S. Courthouse, 299 E. Broward Boulevard, Courtroom 301, Fort Lauderdale, Florida 33301. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be served on or before _____, 2018 in the manner described in the Notice accompanying this Disclosure Statement.

### B.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that the plan be proposed in good faith and comply with the other applicable provisions of Chapter 11 of the Bankruptcy Code, including a requirement that at least one class of impaired claims accept the Plan, and that confirmation of the plan is not likely to be followed by the need for further financial reorganization.  The bankruptcy court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Proponent believes that the Plan satisfies all of the requirements for Confirmation.

### 1.    Best Interests Test

Notwithstanding acceptance of the plan by each impaired class, in order to confirm a plan, the bankruptcy court must determine that the plan is in the best interests of each holder of a claim or interest in any such impaired class that has not voted to accept the plan.  Accordingly, if an impaired class does not unanimously accept the plan, the best interests test requires the bankruptcy court to find that the plan provides to each member of such impaired class a recovery on account of the class member's claim or interest that has a value, as of the effective date, at least equal to the value of the distribution that each such class member would have received if the debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each impaired class of unsecured creditors and equity security holders would receive if a debtor were liquidated under Chapter 7, the bankruptcy court first determines the aggregate dollar amount that would be generated from the assets if the Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code and the assets were liquidated by a trustee in bankruptcy (the "Liquidation Value").  The Liquidation Value would consist of the net proceeds from the disposition of the assets and would be augmented by any cash held by the Debtor.

As of the Petition Date, the Debtor's tangible assets consisted of the following:

### a.  Vehicles

Vehicular assets owned by the Debtor as of Petition Date consisted of a number of vehicles, many of which are subject to the lien of Passport Leasing, Inc., as further documented in the Debtor's bankruptcy schedules. The vehicles which are owned "free and clear" by the Debtor consist of (i) one 2003 Ford Crown Victoria automobile, (ii) sixteen 2004 Ford Crown Victoria automobile, (iii) three 2007 Ford Freestar automobiles, (iv) five 2005 Ford Crown Victoria automobiles, (v) twenty 2008 Ford Crown Victoria automobiles, and (vi) one 2008 Dodge Caravan automobile (collectively, the "Vehicles"). The Vehicles have seen heavy use as taxi cabs over a number of years, with individual mileages estimated to be in the hundreds of thousands.

The Debtor estimates the maximum liquidation value of the Vehicles to be in the amount of $74,441.00.

### b.  Accounts Receivable

As of the Petition Date, the Debtor listed accounts receivable in the projected cash value amount of $27,278.00.

### c.  Furniture, Fixtures and Equipment

As of the Petition Date, the Debtor owned office furniture, fixtures, communication and garage equipment valued at approximately $14,414.00.

### 2.  Liquidation Analysis

In a liquidation scenario, no creditors other than Passport Leasing, Inc. would receive anywhere near full compensation on account of their claims. Passport Leasing, Inc. is at least nominally secured owing to its pre-petition liens on the newer portion of the Debtor's vehicle fleet. Moreover, much of the equipment necessary for the Debtor to maintain even marginally profitable operations is the property of B&L Service, Inc., which provides dispatch and communication services to the Debtor. Without the continued contributions of Passport Leasing, Inc. and B&L Service, Inc., the Debtor is ill-equipped to survive in a market currently saturated by Internet-driven competitors such as Uber and Lyft, and as a going concern would not be worth more than the "fire sale" value of the assets described herein.

The Liquidation Value of the Debtor's assets available to general creditors would furthermore be reduced by the costs and expenses of the liquidation, as well as other administrative expenses of the Chapter 7 case.  The costs of liquidation under Chapter 7 would include the compensation of a trustee or trustees, as well as counsel and other professionals retained by the trustee, disposition expenses, all unpaid expenses incurred by the debtor during its Chapter 11 proceeding (such as compensation for attorneys and accountants) that are allowed in a Chapter 7 proceeding, and litigation costs and claims against the debtor arising from its business operations during the pendency of the Chapter 11 case and Chapter 7 liquidation proceedings.  These costs, expenses and claims would be paid in full out of the debtor's liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interests.

Once the percentage recoveries in liquidation of secured claimants, priority claimants, general unsecured creditors and equity security holders are ascertained, the value of the distribution available out of the Liquidation Value is compared with the

value of the property offered to each of the classes of claims and interests under the plan to determine whether the plan is in the best interests of each class. The Proponent believes that the Plan satisfies the best interests test because recovery to creditors (estimated total unsecured recovery is $103,445.33) is greater than they would receive under a liquidation of the Debtor's assets ($116,133.00, less administrative fees and costs).

The Debtor submits that under a liquidation scenario, there would be only a *de minimis* distribution if any to holders of unsecured claims.

### 2.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Debtor be able to perform their obligations under the Plan. For purposes of determining whether the Plan meets this requirement, the Proponent analyzed the Debtor's ability to meet its obligations under the Plan. The Debtor's operations during the post-petition period have demonstrated a stabilization of profitability, with consistent if moderate profits being generated from June 2017 through October 2017 of an average $33,000.00 per month. The Proponent therefore believes that the Debtor will be able to meet its obligations under the Plan owing to its ameliorated debt service, and steadily improving services when compared to its competitors.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

### A.    Funding of the Plan

During the pendency of the Chapter 11, the Debtor has accumulated cash reserves, which when added to the new value contributed by Class 6, are sufficient to fund payments of Class 5 claims as of the Effective Date. Continued operations of the Debtor will be sufficient to commence payments to Classes 2, 3 and 4 during the plan period.

## VII.    ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed, the following alternatives are available: (a) confirmation of another Chapter 11 plan; (b) conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case leaving Creditors and Interest holders to pursue available non-bankruptcy remedies. Since the Debtor has the ability to generate enough funds to consummate the Plan, these alternatives to the Plan are not likely to benefit creditors. Although the Debtor could theoretically file a new plan, the most likely result if the Plan is not confirmed is that the Chapter 11 Case will be converted to a case under Chapter 7 of the Bankruptcy Code. The Debtor believes that conversion of the Chapter 11 Case to Chapter 7 would result in (i) significant delay in distributions to all creditors who would have received a distribution under the Plan and (ii) diminished recoveries for most, if not all, classes of

creditors. If the Chapter 11 Case is dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against the Debtor. However, in that event, creditors would be faced with the costs and difficulties of attempting, each on their own, to collect claims from a non-operating entity and there are generally no unencumbered assets from which recovery could be obtained.

## VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

### A.   In General

A summary description of certain U.S. federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and is subject to significant uncertainties. Only the principal consequences of the Plan for the Debtor and for the holders of Claims and Interests who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

The following discussion of U.S. federal income tax consequences is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), regulations promulgated and proposed hereunder and judicial decisions and administrative rulings and pronouncements of the IRS as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to holders. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS. FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

### B.      Federal Income Tax Consequences to Holders of Claims

Holders of Claims should generally recognize gain (or loss) to the extent the amount realized under the Plan (generally the amount of cash received) in respect of their Claims exceeds (or is exceeded by) their respective tax bases in their Claims.  The tax treatment of holders of Claims and the character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, among other things, (a) the nature and origin of the Claim, (b) the manner in which a holder acquired a Claim, (c) the length of time a Claim has been held, (d) whether the Claim was acquired at a discount, (e) whether the holder has taken a bad debt deduction in the current or prior years, (f) whether the holder has previously included in income accrued but unpaid interest with respect to a Claim, (g) the method of tax accounting of a holder; and (h) whether a Claim is an installment obligation for U.S. federal income tax purposes.  **Therefore, holders of Claims should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequence to such holders as a result thereof.**

The tax treatment of a holder of a Claim that receives distributions in different taxable years is uncertain.  If such a holder treats the transaction as closed in the taxable year it first receives (or is deemed to have received) a distribution of cash and/or other property, it should recognize gain or loss for such tax year in an amount equal to the cash and the value of other property actually (and deemed) received in such tax year (other than that received in respect of accrued interest) with respect to its Claim (other than any portion of the Claim that is attributable to accrued interest) plus the estimated value of future distributions (if any) less its tax basis in its Claim (except to the extent its Claim is for accrued interest).  A holder should then subsequently recognize additional income or loss when additional property distributions are actually received in an amount equal to the cash and/or value of such other property (other than that received in respect of accrued interest) less the holder's allocable tax basis in its Claim with respect to such subsequent distribution.  A holder may have to treat a portion of any such subsequent distribution as imputed interest recognizable as ordinary income in accordance with the holder's method of tax accounting.  If instead the open transaction doctrine applies as a result of the value of the subsequent distributions that a holder may receive not being ascertainable on the Closing Date or the Effective Date, such holder should not recognize gain (except to the extent the value of the cash and/or other property already received exceeds such holder's adjusted tax basis in its Claim (other than any Claim for accrued interest)) or loss with respect to its Claim until it receives the final distribution thereon (which may not be until the Final Distribution Date).  It is the position of the IRS that the open transaction doctrine only applies in rare and extraordinary cases.  The Debtor believes that the open transaction doctrine should not apply and that holders may be entitled to take the position that on the Closing and on the Effective Date no value should be assigned to the right to receive any subsequent distributions.  **Holders of Claims are urged to consult their own tax advisors regarding the application of the open transaction doctrine and how it may apply to their particular situations, whether any gain recognition may be deferred under the installment method, whether any loss may be disallowed or deferred under the related party rules and the tax**

**treatment of amounts that certain holders of Claims may be treated as paying to other holders of Claims.**

Holders of Allowed Claims will be treated as receiving a payment of interest (in addition to any imputed interest as discussed in the preceding paragraph) includible in income in accordance with the holder's method of accounting for tax purposes, to the extent that any cash and/or other property received pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of cash and/or other property should be attributable to accrued but unpaid interest is unclear. The Plan provides, and the Debtor intends to take the position, that such cash and/or other property distributed pursuant to the Plan will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any) and whether any such interest may be considered to be foreign source income. A holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

### C.    Holders of Disputed Claims

Although not free from doubt, holders of Disputed Claims should not recognize any gain or loss on the date that the assets are transferred to the Disputed Claims Reserve, but should recognize gain or loss in an amount equal to: (a) the amount of cash and the fair market value of any other property actually distributed to such claimant (other than any amounts attributable to accrued and unpaid interest) less (b) the adjusted tax basis of its Claim (other than for accrued and unpaid interest). **Holders of Disputed Claims are urged to consult their own tax advisors regarding the taxation of their Disputed Claims and the timing and amount of income or loss recognized relating to the Disputed Claims Reserve.**

### D.    Information Reporting and Backup Withholding

Certain payments, including the payments of Claims pursuant to the Plan, are generally subject to information reporting by the payor to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the backup withholding rules, a holder of a Claim may be subject to backup withholding at the applicable tax rate with respect to distributions or payments made pursuant to the Plan, unless the holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury as to the correctness of its taxpayer identification number and certain other tax matters. Backup withholding is not an additional tax. Rather, the U.S. federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of U.S. federal income taxes, a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by timely filing the appropriate claim for refund with the IRS.

E.      **Certain U.S. Federal Income Tax Considerations and Importance of Obtaining Professional Tax Assistance**

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.   THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.   THE TAX CONSEQUENCES OF THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## IX.    CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Proponent believes that confirmation of the Plan is preferable to all other alternatives. Consequently, the Proponent recommends all Classes vote to **ACCEPT** the Plan, and to complete and return their Ballots so that they will be **RECEIVED** on or before 5:00 p.m. (prevailing Eastern time) on _____, **2017.**

Dated:  November 30, 2017.

/s/John M. Camillo_____
John M. Camillo, President
Capital Transportation, Inc.

David A. Ray, P.A.
Counsel for Debtor
1330 Southeast 4th Avenue, Suite I
Fort Lauderdale, Florida 33316
Tel: (954) 399-0105
Email:  dray@draypa.com

By:  */s/ David A. Ray*_____